| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
|---|---|
| MQDC, INC. f/k/a MUSS BROOKLYN<br>DEVELOPMENT CORP., | |
| Plaintiff[s], | **MEMORANDUM & ORDER** |
| – against – | 12-CV-1424 (ERK) (MDG) |
| STEADFAST INSURANCE COMPANY, | |
| Defendant[s]. | |

KORMAN, J.:

Judge Go has recommended that defendant Steadfast Insurance Company's ("Steadfast") motion to stay this action and compel arbitration be granted. Report and Recommendation ("R&R") at 22, ECF No. 14. I assume familiarity with the R&R and discuss plaintiff MQDC's three objections.

**I.      Mandatory Arbitration**

MQDC argues that Judge Go erred in holding that the arbitration provision in the Subguard Policy that Steadfast issued to MQDC is mandatory. Pl. Obj. at 3-9, ECF No. 15; *see also* R&R at 3-10. The operative language in the Subguard Policy states that "[a]ny dispute or other matter in question arising between you and us arising under, out of, in connection with or in relation to this Policy shall be submitted to arbitration within thirty (30) days of a request by either party to the other for such arbitration." Subguard Policy § X.M., ECF No. 6-2.

(1)

MQDC contends Judge Go erred in holding that "the second clause of the sentence requiring arbitration to be held within thirty days of a request simply cannot be viewed as a condition precedent." Pl. Obj. at 3-4; R&R at 8. Specifically, MQDC claims that "a request by

1

either party" for arbitration is a condition precedent to arbitration, and that if the condition is not satisfied, the "obligation to arbitrate is not operative or binding." Pl. Obj. at 1.  Citing general insurance contract construction principles, MQDC asserts that applying tests based on "common speech" and the "reasonable expectation and purpose of the ordinary businessman," and "settled rules of grammatical construction," the plain language of the Subguard Policy creates a condition precedent to arbitration, which if not satisfied renders arbitration permissive.  Pl. Obj. at 1, 4-5 (citing *In re Enron Creds. Recovery Corp.*, 380 B.R. 307, 319 (S.D.N.Y. 2008); *Garfield Slope Hous. Corp. v. Pub. Serv. Mut. Ins. Co.* 973 F. Supp 326, 336 (E.D.N.Y. 1997)).

Judge Go held that, based on the mandatory language in the Subguard Policy that "any" dispute "shall" be submitted to arbitration upon the request of either party, the arbitration agreement unambiguously provides for mandatory arbitration.  R&R at 6.  She held that the requirement that a dispute be submitted to arbitration within thirty days of a request by either party, "merely sets a time limit for commencement of an arbitration proceeding."  R&R at 8. She further observed that the arbitration section later provides that no legal proceeding may be commenced "unless and until an award has been rendered by [a] panel of arbitrators."  R&R at 6; Subguard Policy § X.M.  Indeed, the Subguard Policy provides that the parties entered the agreement to arbitrate "to provide for a means of quickly settling disputes without resort to litigation."  Subguard Policy § X.M.  Finally, Judge Go noted that "where [a] contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage." *AT&T Techs., Inc., v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 130 S.Ct. 2847, 2857-59 (2010).  In sum, I agree with Judge Go that a plain reading of the arbitration section makes clear

2

that arbitration is mandatory. Indeed, the Second Circuit has referred to similar provisions requiring arbitration following the request of either party as "mandatory arbitration clauses." *Hartford Acc. & Indem. Co. v. Swiss Reinsurance*, 246 F.3d 219, 221, 223 (2d Cir. 2001).

Nor is there any merit to MQDC's arguments that the Subguard Policy "does not prioritize arbitration over litigation in the event that litigation precedes arbitration," and that deference should be given to the plaintiff's forum choice. R&R at 7-8. As noted above, the Subguard Policy explicitly provides that arbitration is intended as a means to avoid litigation, and that other legal proceedings shall not commence "unless and until an award has been rendered by [a] panel of arbitrators." Subguard Policy § X.M. With respect to the proposition that a plaintiff's forum choice should receive deference, the cases that MQDC cites, which relate to 28 U.S.C. § 1404(a) motions to transfer venue, do not apply in the present context. Pl. Obj. at 7-8 (citing *Atl. Recording Corp. v. Project Playlist, Inc.*, 603 F. Supp. 2d 690, 698 (S.D.N.Y. 2009); *Pilevesky v. Suntrust Bank*, No. 10-cv-2290, 2010 WL 4879006, at *5 (JS) (ETB) (E.D.N.Y. Nov. 22, 2010).

(2)

MQDC argues that Judge Go incorrectly held that, if a request were a condition precedent to arbitration, its satisfaction would be for the arbitrator to decide. Contrary to MQDC's argument, this issue would be a procedural question presumptively for an arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). While questions of whether the parties have submitted a particular dispute to arbitration, also known as "questions of arbitrability," are for courts to decide, that phrase refers to a narrow set of substantive questions, including whether parties are bound by a given arbitration clause and whether an arbitration clause applies to a particular type of controversy. *Id.* at 83-84. On the other hand, "procedural questions which grow out of the dispute and bear on its final disposition," including whether

3

"prerequisites such as *time limits*, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met," "are presumptively *not* for the judge, but for an arbitrator to decide." *Id.* at 84-85 (emphasis in original).  Moreover, as the R&R notes, the parties agreed "to pursue [] arbitration th[r]ough the American Arbitration Association (AAA) in accordance with its then existing Commercial Arbitration Rules," Subguard Policy § X.M, which provide that "[a]ny dispute regarding whether a condition precedent has been met may be raised to the arbitrator for determination."  AAA Rule R-4(c) (2013).  Accordingly, the satisfaction of the alleged condition precedent, as well as "whether Steadfast has waived the right to arbitration by failing to initiate arbitration during the 30 days after filing the motion [to compel arbitration]," R&R at 12, are issues for an arbitrator to address.

(3)

Finally, MQDC argues that the motion to compel is not a request to arbitrate because it does not comply with the AAA Commercial Arbitration Rules.  This argument puts the cart before the horse.  Steadfast seeks to stay the litigation and enforce the arbitration clause which provides that "[a]ny dispute or other matter in question arising . . . under, out of, in connection with or in relation to th[e] Policy shall be submitted to arbitration . . . ."  Subguard Policy § X.M.  The contract further provides that the parties "agree to pursue such arbitration through the American Arbitration Association (AAA) in accordance with its then existing Commercial Arbitration Rules."  Subguard Policy § X.M.  The AAA Commercial Rules do not come into play until an order is entered compelling arbitration or the parties agree to do so.  Again, it is for the arbitrator to decide whether, notwithstanding MQDC's commencement of a judicial proceeding and Steadfast's responsive motion to compel arbitration, the latter was nevertheless required to formally request arbitration.

4

## II.     Presumption in Favor of Arbitration

MQDC argues that the R&R erred by applying a presumption in favor of arbitration. Pl. Obj. at 9-14. It asserts that conflicting provisions raise an issue as to whether the Safeguard Policy's arbitration section is unambiguously mandatory. Because this alleged ambiguity exists in the context of an insurance contract, MQDC argues it should be construed against the drafter. Pl. Obj. at 11-14. As noted above, the R&R properly found that the Subguard Policy unambiguously provides for mandatory arbitration. Accordingly, MQDC's objection fails.

Nevertheless, MQDC's additional objection, that the presumption does not apply because the issue in this case is whether a valid arbitration agreement exists, as opposed to the scope of the arbitration agreement, is flawed. Pl. Obj. at 10-11. This is not a case like *Applied Energetics, Inc. v. NewOak Cap. Mkts., LLC*, where the Second Circuit held that "because the parties dispute[d] not the scope of the arbitration clause but whether an obligation to arbitrate exists, the presumption in favor of arbitration does not apply." 645 F.3d 522, 526 (2d Cir. 2011) (presumption inapplicable because issue was whether parties agreed to arbitrate where original agreement provided for arbitration as exclusive dispute resolution mechanism, but later agreement provided for adjudication as exclusive dispute resolution mechanism and contained merger clause that did not include original agreement on list of documents constituting entirety of the parties' agreement). Here, no one contends that the arbitration section, as written in the Subguard Policy, is invalid, and unlike *Applied Energetics* there is no subsequent agreement that abrogates that agreement to arbitrate. Indeed, the parties' "express agreement to arbitrate was validly formed and . . . is legally enforceable and best construed to encompass the dispute." *Granite Rock*, 130 S. Ct. at 2859-60.

5

### III. Punitive Damages Claims

Finally, MQDC claims that even if the Subguard Policy's arbitration clause is mandatory, Judge Go erred in submitting MQDC's claims for punitive damages to arbitration. Pl. Obj. at 14-18; R&R 12-22. In its opposition to Steadfast's motion to compel, and in its objection here, MQDC argues that the Federal Arbitration Act ("FAA") does not apply to the issue of arbitrability in this case. Pl. Opp'n to Mot. to Compel at 20-23; Pl. Obj. at 14. The Subguard Policy's choice-of-law clause provides that, if a dispute relating to the agreement results "in litigation, arbitration, or [an]other form of dispute resolution, the law of the State of New York shall apply." Subguard Policy § X.D. Because under New York law an arbitrator does not have authority to award punitive damages, *Garrity v. Lyle Stuart*, 40 N.Y.2d 354 (1976), MQDC asserts that its claims for punitive damages cannot be submitted to arbitration.

MQDC argues that Judge Go incorrectly stated that MQDC did not dispute that the FAA applies. Pl. Obj. at 14; R&R at 3 n.1. While that argument is correct, Judge Go correctly held that the FAA applies. "[I]f contracting parties agree to *include* claims for punitive damages within the issues to be arbitrated, the FAA ensures that their agreement will be enforced according to its terms even if a rule of state law would otherwise exclude such claims from arbitration." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 58 (1995) (emphasis in original). As in this case, an arbitration agreement in *Mastrobuono* provided that "any controversy" arising from the transaction at issue "shall be submitted to arbitration," and a choice-of-law provision stated that the agreement "shall be governed" by New York law. *Id.* at 58-59. Like that case, the broad arbitration clause here covers claims for punitive damages. *Id.* at 60-61. In turn, as *Mastrobuono* stated, "the law[] of the State of New York" in the choice-of-law section should be read "to encompass substantive principles that New York courts would apply, but not include special rules limiting the authority of arbitrators." *Id.* at 63-64. Moreover,

6

Second Circuit cases have held that where the contract containing the arbitration clause involves transactions involving or affecting interstate commerce, a point that MQDC has not disputed, "federal rather than state law governs the question of whether [a] dispute is subject to arbitration," even where the contract expressly states that state law governs disputes arising under the agreement. *Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.*, 753 F. Supp. 1078, 1084 (E.D.N.Y. 1990) (citing *Graphic Scanning Corp. v. Yampol*, 850 F.2d 131, 133 (2d Cir. 1988)). Because the choice-of-law provision covers only the rights and duties of the parties, punitive damages claims may, under the arbitration clause, be submitted to an arbitrator. *See Mastrobuono*, 514 U.S. at 63-64.

MQDC attempts to distinguish the choice-of-law provision in *Mastrobuono*, which stated that it covered the entire agreement at issue, because the provision here explicitly states that it covers "litigation, arbitration, or other form[s] of dispute resolution." Pl. Obj. at 14-16. MQDC contends that because the choice-of-law provision in the Subguard Policy refers specifically to arbitration, "New York arbitration law applies to any arbitration between Steadfast and MDQC." Pl. Obj at 16. This objection ignores the distinction described in *Mastrobuono* between substantive principles and special rules limiting arbitrators' authority. *Mastrobuono*, 514 U.S. at 63-64.

MQDC also argued in its opposition to the motion to compel arbitration that the punitive damages waiver is unenforceable because it prevents MQDC from vindicating its statutory rights, under the New York General Business Law sections 349 and 350, and common law rights. R&R at 13-14; Pl. Opp'n to Mot. to Compel 25-27. Section 349 provides that "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section." N.Y. Gen Bus. Law § 349(h); R&R at 14. Section 350-e

7

contains the same language, but with a ten thousand dollar limit on actual damages.  N.Y. Gen Bus. Law § 350-e(3); R&R at 14.

Judge Go properly relied on *Pacificare Health Sys, Inc. v. Book*, 528 U.S. 401 (2003), and cases applying it, which dictates that a court "should not, on the basis of 'mere speculation' that an arbitrator might interpret [] ambiguous agreements in a manner that casts their enforceability in doubt, take upon [itself] the authority to decide the antecedent question of how the ambiguity is to be resolved."  *Pacificare*, 528 U.S. at 406-07 (submitting issue of enforceability of limit on punitive damages to arbitrator because it was unclear whether that limit conflicted with RICO treble damages).  In *Pacificare*, because the Court did "not know how the arbitrator w[ould] construe the remedial limitations, the questions whether they render[ed] the parties' agreements unenforceable and whether it [was] for the courts or arbitrators to decide enforceability in the first instance [were] unusually abstract.  [Thus], the proper course [was] to compel arbitration."  *Id.* at 407.

Here, it is unclear whether there is a conflict between the Subguard Policy's limitation on punitive damages and the treble damages available under sections 349 and 350.  First, because "statutory treble-damages provisions [fall] on different points along the spectrum between purely compensatory and strictly punitive awards," it is possible the provisions may not conflict.  *Id.* at 405-07 (holding it was unclear whether waiver of punitive damages conflicted with RICO treble damages).  Second, any potential conflict could be rendered moot because the statutory treble damages are available only if the "defendant willfully or knowingly violated" one of the statutory sections.  Because the availability of treble damages is contingent on the arbitrator's factual findings, it is unclear whether a conflict will arise.  *See Anderson v. Comcast, Corp.*, 500 F.3d 66, 74-75 (1st Cir. 2007) (holding there was no question for the court to decide because a conflict between statutory multiple damages and waiver of such damages arose only if the

8

arbitrator found a willful or knowing statutory violation). Judge Go also held that even if there were a conflict between the Subguard Policy and the New York statutes, it was unclear whether the statutes' discretionary treble damages could be waived. R&R at 18-19. The waivability of such damages is also an issue for the arbitrator to address. *See Kristian v. Comcast Corp.*, 446 F.3d 25, 49-50 (1st Cir. 2006) (holding it was for the arbitrator to decide whether discretionary treble damages under a state antitrust statute could be waived). Finally, like in *Pacificare*, whether a conflict exists cannot be characterized as a "gateway" question of arbitrability for a court to decide. *Pacificare*, 528 U.S. 407 n.2 ("the preliminary question whether the remedial limitations at issue here prohibit an award of [] treble damages is not a question of arbitrability"); *see also Howsam*, 537 U.S. at 84-85.

MQDC fails to object directly to the R&R's analysis. Instead, it argues that a court must decide questions of unconscionability.[1] Pl. Obj. at 17-18. MQDC's argument before Judge Go and her R&R, however, addressed the issue of who should decide whether the punitive damages limitation in the Subguard Agreement is enforceable when it is unclear whether it conflicts with MQDC's statutory rights. Pl. Opp'n to Mot. to Compel at 20-23; R&R at 13-22. While MQDC labeled that argument as one of unconscionability, it did not present an argument in its opposition to the motion to compel arbitration or in its objections on that ground.

## CONCLUSION

The recommendation of the United States Magistrate Judge is adopted.

**SO ORDERED.**

Brooklyn, New York
December 6, 2013

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge

---

[1] MQDC briefly states in its objections that the punitive damages limitation is unenforceable because it is contrary to public policy. Pl. Obj. at 18. This contention relies on its argument that the limitation frustrates MQDC's statutory rights, which as explained above is to be decided by an arbitrator.

9